Good morning. May it please the Court, my name is Darcy Muhlenberg. My colleague, Meredith Nickel, and I will be arguing for the petitioners. We are pro bono amici curi counsel for the petitioners in this action. And we appreciate you, even though you are not attached to a program. Thank you for taking on the case. I will briefly address the jurisdiction portion of this petition, and Ms. Nickel will be arguing the merits of the petition. I would like to reserve two minutes for rebuttal, if that's possible. Wasn't there a 28-J letter recently that pretty much solved the jurisdiction issue? Yes, there was. That is Kucana v. Holder, and I do have an extra copy if you need that. Essentially, the Supreme Court in Kucana v. Holder held that the federal courts do have jurisdiction to review denials of motions to reopen. And that is what our petitioner has presented. We had already held something similar, had we not, in Fernandez or Goel or one of those cases. Correct. In Fernandez v. Gonzalez, this Court held that it has jurisdiction to review denials of motions to reopen in four situations. One situation is that at issue in a petitioner's motion. Basically, it's when a determination has been made that the applicant failed to satisfy procedural standards, such as the evidentiary requirements specified in 8 CFR Section 1003.2C1. I don't know if this is the part that, you know, I don't, you know, I can't speak for the rest of the panel, because we obviously haven't discussed your case, but the, I don't have a problem with the jurisdiction. I more have a problem with what it appears to me is you're trying, you can't get through the front door to review a discretionary decision, so you're trying to come through the back door and somehow establish that Dr. Kalman's report is new evidence. And I don't see why it couldn't have been presented at the original hearing. What it looks like, you know, I mean, what I'd like you to respond to, why isn't this just an attempt to redo something that you already lost and do a better job? My colleague, Ms. Nickel, would like to address the merits of the petition. Thank you. If you have no further questions on jurisdiction. You can probably, if it's on rebuttal, you can address that more if it appears to be the case. Thank you. Good morning. May it please the Court, my name is Meredith Nickel, and I also was appointed pro bono in U.S. Security Council on behalf of Petitioners, and I am happy to address the merits of this petition. I think I'll just start right off with Judge Callahan's question. The evidence here is new evidence, and it was not previously available. So the ‑‑ But should it have been? In other words, the child's condition was not a new condition. It was an old condition, a preexisting condition, and ordinarily if one could have obtained more or better medical evidence of a then existing condition, it's not considered new evidence. I think you're absolutely right that this is an underlying condition that has always existed, and Fernando has always been afflicted with anemia and asthma. What's new about Dr. Kalichman's report is the diagnosis that the two, the anemia and the asthma, synergistically interact with each other. Well, but it didn't change. It didn't become synergistic after the hearing. It was always synergistic. There just wasn't ‑‑ there wasn't testimony presented, and I'm assuming that Dr. Kalichman would have said that before, and that's where the problem is for me. I think that's correct. Let me talk a little bit about the CEDA case. In that case, the petitioner also had a child who had an underlying health condition, a history of fevers and respiratory illness, and in that case, the diagnosis was not revealed until after the BIA's decision. A new medical report was provided, and the case was reopened. I think it's the nature of ‑‑ But isn't that a bit different in that there had been no, or at least the BIA could consider it to be different because the family had received no diagnosis. They didn't know at all that the condition, the respiratory condition in that case had existed. I think Dr. Kalichman's report also revealed something that the family here did not know about Fernando's medical situation, and that is that his asthma made his anemia worse. He had a more chance of a life‑threatening exacerbation of his asthma because of his anemia, and I think that the family did learn something new by Dr. Kalichman's report, something that they did not have access to at the time of the hearing. This information ‑‑ Well, it was ‑‑ I guess this is the situation. You have my heart, but what you need is my mind, and, you know, and you need the case longness, and it just seems to me that, yes, Dr. Kalichman is a better ‑‑ he's better evidence, but they knew he had anemia, they knew he had asthma, and he'd had it from when he was very young, and none of that is new. If I may draw an analogy to standard home inspection, if you're purchasing a house, you have a pest inspector come in, the pest inspector says the house has termites and the house has spiders, here's what you should do. Well, then a week later, another pest inspector comes in and says, yeah, the house has spiders and it has termites, but that's a, you know, the treatment there is much more costly. Well, in that situation, the buyers certainly want to go back to the sellers, renegotiate the deal, because now they understand something that is more costly, something that they're going to have to address in the house in a different way. Similarly here, we have a medical report that comes after the BIA's decision that the family now has a different perspective on Fernando's health that they need to address differently. What they could have, should have, or might have been able to do prior to the BIA's decision is impossible to know. Could I ask a question? Is the interrelationship between asthma and anemia a new medical discovery, which wasn't known at the time of the first hearing? There's no evidence to that effect in the record. Is there any evidence that either child had deteriorated since the original hearing? There is no evidence of that in the record either. The medical, their medical conditions have remained the same as far as the record goes, and the two children were receiving the same medical care and medical attention that they require with blood tests and attention to their asthma as they had been. You may wish to save some rebuttal time. Yes, thank you. May it please the Court, Tim Remnitz on behalf of United States Attorney General Eric H. Holder, Jr. Do you still contend we don't have jurisdiction? Respondents prepared to concede jurisdiction in this case. That what? Respondent concedes jurisdiction in this case. Okay. But as the Court noted earlier, this is a case where the evidence didn't, the evidence didn't become something different. This was a case that needed to prove new, previously unavailable evidence in order to comply with the procedural requirements for a motion to reopen. The evidence is not new or previously unavailable, and there's no explanation in the record for why they could not have sought this doctor's opinion as early as 2003. Fernando, the child at issue, was diagnosed with anemia and asthma prior to 2003. There's a medical note from a Dr. Rain that was submitted in 2003 to the immigration judge, which stated that Fernando's anemia was benign, and his mother also testified regarding his two conditions, asthma and anemia, and stated that they'd been there since childhood, and this was presented to the immigration judge, and this is what he found not to constitute exceptional, extremely unusual hardship. That was presented to the BIA. The BIA affirmed the decision of the immigration judge, and they did not take that decision to this Court. Well, I think that their claim is that they were unaware. They knew he had asthma, they knew he had anemia, but they weren't aware that the synergistic effect of those two puts it in a different category as opposed to just having A and B. A and B then causes a C. Right. They may not have been personally aware of that condition, but there's no reason why they could not have sought Dr. Cliffman's opinion in 2003. If they sought it in 2005, which seems to be an end run around, the Court's lack of jurisdiction otherwise to consider whether this rose to a level of hardship. And to address their analogy about home building, if there was a house that had termites and spiders in it, and then they sought an opinion of a builder or contractor to cure that condition, they could have also sought the next opinion, diagnosing it as a more expensive condition on the same timeline. Or, in their analogy, lacked a timeline that we have here. They could have presented that evidence, in this case, to the immigration judge. They could have sought this opinion at that time if they did not pursue it. Therefore, it's not previously new, unavailable evidence. But the Board also did not find it just previously new or unavailable. They also found it immaterial. The evidence has to be new and material. They found, as the Court noted specifically, there was no significant change in this Fernandez condition. That even if it was new or previously unavailable, this was the same conditions as an anemia that the immigration judge considered and found did not rise to a level of hardship. Well, Mr. Ramnitz, is there any indication that the petitioners here didn't use all resources at their fingertips to produce medical evidence at the first hearing? I mean, maybe it was a case of medical malpractice that their doctor didn't come forward with the observation that there was synergy between asthma and anemia. And should we blame the parents for not doing that? Well, this petitioner's burden to prove their case. This is affirmative relief they sought from the United States Attorney General. And it is their burden, and they have to produce the evidence to prove their case. So it is something they would have to do to seek opinions like this in their initial proceedings. So if there were to add a declaration that the doctor's failure to note the synergy in the first round, the first hearing, was below the professional standard of care, would that change the matter? Possibly. However, there is no evidence of that sort in this record. There's no evidence of medical malpractice on behalf of Dr. Rain or the various other reports that were put into the record diagnosing or treating Fernando's anemia and asthma. And so, furthermore, if it was some evidence of malpractice, as the Board noted, it's also immaterial, there was no significant change in Fernando's condition from the immigration judge proceedings to what they allege is new evidence. In Dr. Cliffman's report, he states they act synergistically, but he also states that otherwise Fernando's condition was unremarkable, besides the mild wheezing. Moreover, he stated there have been relatively few serious exacerbations of his condition. Well, if, in fact, let's say after the first hearing there had been a new discovery in medicine that the synergistic effect is a completely, you know, puts a patient in a completely different risk factor, would that be a different situation than we have factually here? If there is some evidence of a new breakthrough in medicine, perhaps. But in this case, there's nothing in the record that shows this opinion could not have been rendered in 2003. So, in sum, if there's any further questions, the government would wrap up here. I don't believe there are. Okay. In sum, the government submits that there's no evidence of new, previously unavailable evidence, and the Board correctly found there's also further moral or immaterial evidence, and denied the motion to reopen. They did not abuse their discretion in making this determination. Thank you. Thank you, Counsel. Ms. Nichol, you have some rebuttal time remaining. Thank you. I think primarily petitioners want to point out that it would be unreasonable to impose an endless run of medical opinions prior to the BIA. There's no telling how many reports they could get or should get prior to the BIA's hearing. The petitioners, of course, have every interest in obtaining an accurate health report for their children. They happen to have found Dr. Kalichman and discovered this new medical evidence after the BIA had made its decision. It's precisely that new evidence that the petitioners believe requires a reopening of this case in order to further look at whether or not that evidence is significant enough to warrant cancellation of removal. Well, if there were two ways to look at it, let's say that you could look at it that they just wanted to do it as a redo and they wanted a chance to put on better evidence and that it wasn't new, and the other way to look at it is that they, you know, that they didn't really know that. If the standard's abuse of discretion and there's two reasonable ways to look at it, do you lose? Well, I think no. I think that the integrity of the petitioners here in their efforts, their primary concern, of course, is the health of Fernando. We have to believe that that is the case. There's been no adverse credibility finding here. We need to believe what the petitioners are telling us, that this is the first time they learned about the synergistic effect of the asthma and anemia that Fernando suffers. And so given that, I think that we need to trust that and we need to give the petitioners a chance to have a full review of this new medical evidence that they obtained. If there's no further questions. I don't believe there are. Thank you. Thank you. The case just argued is submitted, and we appreciate the helpful arguments of both sides. And again, thank you for taking a pro bono case. It's very helpful to the Court to have counsel in these cases.
judges: Graber, Callahan, Bea